Citation Nr: 1607899 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 09-28 994 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. What evaluation is warranted for degenerative disc and joint disease of the lumbar spine since June 2, 2007?

2. Entitlement to a rating in excess of 40 percent for lumbar degenerative disc disease since October 28, 2010. 

3. What evaluation is warranted for seborrheic dermatitis with rosacea since June 2, 2007?

4. Entitlement to a total disability rating based on unemployability due to service-connected disabilities.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Siobhan Brogdon, Counsel


INTRODUCTION

The Veteran served on active duty from April 1996 to June 2007.

The appeal comes before the Department of Veterans Affairs (VA) Board of Veterans Affairs (Board) from an April 2008 rating decision of the Philadelphia, Pennsylvania VA Regional Office (RO) that, effective June 2, 2007, granted entitlement to service connection for lumbar degenerative disc disease and assigned a 10 percent rating; and granted entitlement to service connection and a noncompensable rating for seborrheic dermatitis. 

In a July 2009 rating decision the grant of service connection for seborrheic dermatitis was expanded to include rosacea, and the rating was increased to 10 percent, effective June 2, 2007.

The Veteran was afforded a videoconference hearing at the RO in November 2010 before the undersigned sitting at Washington, DC. The transcript is of record.

The case was remanded for further development by the Board in February 2011.

In a March 2012 rating decision, a 40 percent rating was assigned for lumbar degenerative disc disease effective October 28, 2010. The issue remains in appellate status as the maximum scheduler rating has not been assigned since June 2, 2007. See AB v. Brown, 6 Vet.App. 35 (1993).

FINDINGS OF FACT

1. Between June 2, 2007 and October 27, 2010, lumbar degenerative disc/joint disease was not manifested by forward flexion of the thoracolumbar spine less than 61 degrees, or a combined range of thoracolumbar motion less than 121 degrees, or, muscle spasm or guarding is severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

2. Since October 28, 2010, degenerative disc/joint disease of the lumbar spine has not been manifested by unfavorable ankylosis of the spine, and the disorder is not manifested by incapacitating episodes.

3. Since June 2, 2007, seborrheic dermatitis with rosacea has been manifested by macular and papular lesions and flaking of the scalp with at least five percent, but less than 20 percent of exposed areas affected, and a requirement for near constant therapeutic doses of topical corticosteroids as well as other skin medication.

4. The Veteran's service-connected disabilities do not alone preclude substantially gainful employment consistent with his education and occupational history.


CONCLUSIONS OF LAW

1. The criteria for an evaluation in excess of 10 percent for lumbar degenerative joint and disc disease were not met between June 2, 2007 and October 27, 2010. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.40, 4.45, 4.71a, Diagnostic Codes 5237-5243 (2015).

2. The criteria for an evaluation in excess of 40 percent for lumbar degenerative joint and disc disease are not met since October 28, 2010. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.40, 4.45, 4.71a, Diagnostic Codes 5237-5243. 

3. The criteria for an evaluation in excess of 10 percent for seborrheic dermatitis are not met since June 2, 2007. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.118, Diagnostic Codes 7806, 7817 (2015).

4. The criteria for a total rating based on unemployability due to service-connected disability are not met. 38 U.S.C.A. §§ 1155, 5107(b); 38 C.F.R. §§ 3.102, 3.159, 3.340, 3.341, 4.7 4.15, 4.16, 4.19 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran asserts that the symptoms associated with his service-connected back and skin disorders are more severely disabling than reflected by the currently assigned disability evaluations and warrant higher ratings. He testified at his personal hearing that back pain affected his employment capabilities to a substantial extent, and that the quality of his life was diminished because he could not do things he formerly enjoyed. The appellant stated that his skin disorder was worsening and that he had been prescribed corticosteroids for which the next higher rating for his skin disability was warranted. It is maintained that he is unable to secure and maintain gainful employment as a result of service-connected disabilities and is entitled to a total rating based on unemployability due to service-connected disability. 

Veterans Claims Assistance Act of 2000 (VCAA)

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2015). The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met in this instance. 

VA fulfilled its duty to assist the Veteran's in obtaining identified and available evidence needed to substantiate the claims, to include providing VA compensation examinations. The Veteran's testified in November 2010 in support of his claims. There is no issue as to providing an appropriate application form or the completeness of the application. VA appropriately notified the Veteran of the information and evidence needed to substantiate and complete the claims. The Board thus finds no evidence of any VA error in notifying or assisting the Veteran's that reasonably affects the fairness of this adjudication. 38 C.F.R. § 3.159(c). As such, the claims on appeal are ready to be considered on the merits.

Law and Regulations - General

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) found in 38 C.F.R. Part 4 (2015). The Board attempts to determine the extent to which the Veteran's service-connected disability adversely affects the ability to function under the ordinary conditions of daily life and is based, as far as practicable, on average impairment of earning capacity in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt is resolved in favor of the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

Lumbar degenerative disc and joint disease

Pertinent Regulations

All diseases and injuries of the spine other than intervertebral disc syndrome are to be evaluated under the General Rating Formula for the spine (codified at 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243). Under the General Rating Formula for the spine, a 10 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees, or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. 38 C.F.R. § 4.71a.

A 20 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees, or the combined range of motion of the thoracolumbar spine is not greater than 120 degrees, or, muscle spasm or guarding is severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Id.

A 40 percent disability rating is assigned for forward flexion of the thoracolumbar to 30 degrees or less, or there is favorable ankylosis of the entire thoracolumbar spine. Id. 

A 50 percent disability rating is assigned when there is unfavorable ankylosis of the entire thoracolumbar spine. Id. 

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension from zero to 30 degrees, left and right lateral flexion from zero to 30 degrees, and left and right lateral rotation from zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion is 240 degrees for the thoracolumbar spine. Unfavorable ankylosis as a condition in which the entire thoracolumbar spine is fixed in flexion or extension and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in the neutral position (zero degrees) always represents favorable ankylosis. Id.

Intervertebral disc syndrome (preoperatively or postoperatively) is to be rated either under the General Rating Formula or under the Formula for Rating Intervertebral Disc Syndrome based on incapacitating episodes over the past 12 months, or by combining under 38 C.F.R. § 4.25 separate evaluations of chronic orthopedic and neurologic manifestations along with evaluations for all other disabilities, whichever method results in the higher evaluation. 38 C.F.R. § 4.25, 68 Fed.Reg. 51, 443 (Aug. 27, 2003) (codified at 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243. 

A 20 percent evaluation is assigned for intervertebral disc syndrome where there are incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months. A 40 percent evaluation is to be assigned for intervertebral disc syndrome with incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months. A 60 percent evaluation is to be assigned for intervertebral disc syndrome with incapacitating episodes having a total duration of at least six weeks during the past 12 months. 38 C.F.R. § 4.71a, Diagnostic Code, Diagnostic Code 5243.

For purposes of evaluations under Diagnostic Code 5243, an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. "Chronic orthopedic and neurologic manifestations" means orthopedic and neurologic signs and symptoms resulting from intervertebral disc syndrome that are present constantly or nearly so. See 67 Fed.Reg. 54,345-49 and Note (1) (codified at 38 C.F.R. § 4.71a, Diagnostic Code 5243 and Note (1).

Factual Background and Legal Analysis

In evaluating the clinical findings pertaining to the lumbar spine between June 2, 2007 and October 27, 2010, the evidence reflects that the Veteran did not have the functional equivalent of forward flexion of the thoracolumbar spine limited to 61 degrees or less for which a higher disability evaluation might be awarded on this basis. DeLuca v. Brown, 8 Vet.App. 202, 207 (1995). Flexion was shown to be 80 to 90 degrees when initially examined in June 2007. While the Veteran reported constant back pain and spasm but only minimal spasm and tenderness were elicited, and there is no evidence showing that muscle spasm or guarding was severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

The appellant has stated that his activities of daily living were affected and that he had difficulty sitting, standing and walking for prolonged periods. Physical examination, however, showed that the appellant's gait and posture were normal. Following examination, the examiner determined that service-connected back disability was only mildly active at that time. 

VA outpatient clinical records dating from 2008 indicate that the appellant sought continuing treatment for complaints of chronic low back pain for which he was prescribed multiple medications. The Board observes, however, that there was no evidence of any untoward symptomatology leading to an abnormal gait or abnormal spinal contour prior to October 28, 2010. There was no record of any incapacitating episodes of back pain for which bedrest was prescribed. There is no evidence that forward thoracolumbar flexion was ever less than 61 degrees.

In view of the above, the Board finds that symptomatology associated with the service-connected low back disorder from June 2, 2007 to October 27, 2010 did not more nearly approximate the criteria for a 20 percent rating under 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243. The evidence for that period preponderates against finding muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour, nor was evidence of incapacitating symptomatology documented or limitation of motion for which more than a 10 percent disability evaluation was warranted. 

With respect to possibility of entitlement to an increased evaluation under 38 C.F.R. §§ 4.40 and 4.45 on the basis functional loss due to pain and other impairment associated with motion, the appellant clearly had chronic pain and reported that some activities of employment and daily living had been constrained. However, pain associated with motion is fully contemplated by the assigned 10 percent evaluation. Indeed, on initial VA examination in June 2007, the examiner found that back function was not additionally limited by pain, weakness, fatigue, and lack of endurance. The clinical records dating from 2008 do not evidence greater symptomatology or disability that that indicated above. As such, a higher rating based on pain and functional loss is not warranted prior to October 28, 2010.

Based on the foregoing, the Board concludes that the symptoms associated with the Veteran's lumbar degenerative disc and joint disease did not more nearly approximate the criteria for a 20 percent disability evaluation from June 2, 2007 to October 27, 2010 and a rating higher than 10 percent is denied for that period.

On October 28, 2010, a statement was received from the Veteran's employer indicating that the Veteran had been given an opportunity for a promotion as an inkjet operator but had reluctantly from the training program because of back pain. Based on such apparent functional impairment, the RO determined that the appellant's service-connected lumbar spine warranted a much higher disability rating for which a 40 percent evaluation was awarded.

The evidence received in support of the claim since October 28, 2010 reflects that the appellant has continued to receive VA outpatient treatment for complaints of chronic back pain. The appellant has been diagnosed with degenerative arthritis of the spine and intervertebral disc syndrome. On VA examinations in April 2011 and June 2015, he appellant indicated that he had back pain with occasional radiation into the lower extremities and limitations on prolonged standing, sitting, walking, and carrying heavy loads, etc. Findings obtained on those examinations disclosed flexion from zero to 40 degrees but no loss or muscle strength, atrophy or ankylosis. Pain was noted to result in functional impairment. It was found, however, that pain, weakness, fatigability or incoordination did not significantly limit functional ability with repeated use over a period of time. It was noted in 2015 that the Veteran had not had any acute signs and symptoms due to an intravertebral disc syndrome that required bed rest prescribed by a physician. He had no other pertinent physical findings, complications, conditions, signs or symptoms related to any conditions 

In reviewing the entirety of the clinical evidence since October 28, 2010, and giving due consideration to the provisions regarding painful motion under 38 C.F.R. §§ 4.40 and 4.45, the appellant's lumbar spine disability does not approximate the schedular criteria for a 50 percent evaluation under the General Rating Formula for Diseases and Injuries of the Spine. In order for a higher evaluation to be awarded, the appellant would have to demonstrate unfavorable ankylosis of the thoracolumbar spine which is not demonstrated in this case. 38 C.F.R. § 4.71a. As well, the criteria for a higher evaluation based on an intervertebral disc syndrome is similarly not shown. Although the Veteran reports constant pain, his disc symptomatology in and of itself has never been shown to be manifested by incapacitating episodes having a total duration of at least six weeks during the past 12 months for which a 60 percent disability rating might be considered. 

The Board thus concludes that the findings needed for the next higher evaluations are not demonstrated by the evidence of record. Because the preponderance of the evidence is against the claim for a higher rating, the benefit-of-the-doubt doctrine is inapplicable and a higher rating since October 28, 2010 is denied. 38 U.S.C.A. § 5107.

Seborrheic dermatitis with rosacea.

Pertinent Regulations

The Veteran's skin disorder is rated under the provisions of 38 C.F.R. § 4.118, Diagnostic Code 7806 which provides that a 10 percent rating is warranted when there is at least 5 percent, but less than 20 percent of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs is required for a total duration of less than six weeks during the past 12-month period. Id.

Alternatively, the skin disorder may be rated under 38 C.F.R. § 4.118, Diagnostic Code 7817 for exfoliative dermatitis which provides that a 10 percent rating is warranted for exfoliative dermatitis where there is any extent of involvement of the skin, and; systemic therapy such as therapeutic doses of corticosteroids, immunosuppressive retinoids, PUVA (psoralen with long-wave ultraviolet-A light) or UVB (ultraviolet-B light) treatments, or electron beam therapy is required for a total duration of less than six weeks during the past 12-month period. A 30 percent rating warrants any extent of involvement of the skin, and; systemic therapy such as therapeutic doses of corticosteroids, immunosuppressive retinoids, PUVA or UVB treatments, or electron beam therapy is required for a total duration of six weeks or more, but not constantly, during the past 12-month period. Id.

Factual Background and Legal Analysis

At a July 2007 VA skin examination the appellant complained of intermittent red lesions of his face, primarily in the eyebrows and beside the nose and chin that tended to resolve within 10 to 14 days. He stated that scalp itching was constant which he had treated with Sebulex shampoo but had discontinued because he did not perceive a benefit. On physical examination, the appellant was observed to have scaly red patches in the scalp, particularly at the hairline, and scattered red papular lesions in the eyebrows and nasolabial fold extending to the right cheek and chin. Following examination, the examiner stated that there was no scarring and that skin symptoms affected about five percent of the exposed area and less than five percent of the total body. 

VA outpatient clinical records dated in June 2008 reflect that the appellant sought treatment for similar skin symptoms and rosacea. He prescribed Ketoconazole cream and shampoo for his face and scalp, as well as Doxycycline for the face. 

At a VA examination in December 2008, the Veteran related that skin symptoms were worsening. Following examination, the examiner found no scarring or disfigurement. The symptoms were judged to affect less than five percent of the exposed areas and body. 

The appellant sought treatment in September 2010 and e was noted to have crusty patches on his scalp, and a silvery patchy covering on the left face. He stated that Fluocinolone, Ketoconazole and hydrocortisone were not helpful. In October 2010, it was reported that he had "annual" erythematous patches with minimal scale of the scalp and erythematous macules on the temple and lower chin. There were pink scaly patches on the central chest. Following evaluation, the diagnoses were erythematous scaly eruption. The appellant was advised to continue the medications. 

At a VA compensation and pension examination in April 2011, the appellant related that his skin condition was progressively worsening. The examiner stated that two to three percent of exposed area was affected and no more than five percent of total skin area was affected. 

At a VA examination in June 2015, the Veteran was observed to have multiple small macules on the forehead, nasolabial folds, chin and mid chest. He was also noted to have flaking of the scalp, red patches on the scalp and several white scaly patches. There was no scarring, disfigurement or systemic manifestations. The diagnosis was seborrheic dermatitis with rosacea. The Veteran was reported to utilize the topical corticosteroid hydrocortisone and Ketoconazole shampoo one to two times a week, but had had no systemic corticosteroids, immunosuppressive medication, antihistamines, immunosuppressive retinoids, sympathomimetics, PUVA, UVB, electron beam therapy. The appellant had not had any debilitating episodes. 

Legal Analysis

Review of the evidence since June 2, 2007 reflects that the appellant's service-connected seborrheic dermatitis with rosacea has primarily been manifested by macular and papular lesions on various aspects of his upper torso, including the scalp, face, forehead, nasolabial folds, chin and mid chest. The condition has also been marked by a flaking of the scalp. Evidence presented since the inception of the claim reflects that the appellant has been prescribed multiple medications for skin symptoms, to include a topical corticosteroids, but that symptoms persist. 

A higher rating for the Veteran's service-connected skin disorders depends upon the percentage of the area affected by seborrheic dermatitis with rosacea, as well as the type of treatment rendered therefor. It is shown that over the course of the appeal, the Veteran has never had at least 20 percent or greater of the entire body or exposed areas affected by skin symptoms. The record further reflects that the appellant has only been prescribed topical corticosteroids and other medications to alleviate his symptomatology. There is no indication that he has received any systemic corticosteroids or immunosuppressive therapies for the conditions. There is no evidence of scarring, disfigurement or any systemic manifestations. Based on the foregoing, the Board concludes that the symptoms associated with the service-connected seborrheic dermatitis with rosacea have not more nearly approximated the criteria for a 30 percent disability evaluation at any time since the grant of service connection and that the award of a 10 percent rating has been most appropriate since June 2, 2007. See Fenderson v West, 12 Vet.App. 119 (1999). Under the circumstances, the Board concludes that entitlement to a higher rating for seborrheic dermatitis with rosacea is denied. 

Individual unemployability

Pertinent Regulation

Total disability ratings for compensation may be assigned where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disability or disabilities; provided that if there is only one such disability, this disability shall be ratable as 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

Factual Background and Legal Analysis

A claim for increased compensation based on unemployability was received in September 2015. The Veteran indicated that he had worked full-time in a warehouse for a printing company from 2007 through December 2012 from which he had lost approximately 20 days a year. He noted occupational experience as a gas attendant and assistant manager between 2013 and 2014. The appellant wrote that he had been attending college since June 2013 to the present.

The Veteran is service connected for lumbar degenerative disc disease, rated 40 percent disabling, seborrheic dermatitis with rosacea, rated 10 percent disabling, right and left lower extremity radiculopathy, each rated 10 percent disabling, and for a Tarlov cyst of the tailbone, rated zero percent disabling. 

The Veteran has been receipt of a combined disability rating of 60 percent for service-connected disability since November 1, 2010. Thus, under 38 C.F.R. § 4.16(a), he does not meet the threshold criteria for assigning individual unemployability as he neither has one disability rated 60 percent or more, nor does he have two or more disabilities to bring the combined rating to 70 percent or more. 

Nevertheless, the primary question for consideration in this instance is whether the service-connected disabilities are sufficient in and of themselves to render the average person or the Veteran unable to secure or maintain substantially gainful employment. After careful review of the evidence of record, the Board concludes that a basis for a favorable decision is not demonstrated.

The Veteran has had a number of VA evaluations over the course of the appeal in which the examiners have clearly indicated that the service-connected skin disorder has no effect on his ability to do his job. The record further reflects that while there was evidence of hypoactive deep tendon reflexes (1+) in the lower extremities on VA examination in June 2015 and a complaint of some numbness, there is no indication that lower extremity muscle strength or sensation was impaired. Straight leg raising was negative. As such, bilateral lower extremity radiculopathy does not significantly impact the Veteran's ability to secure or maintain employment. Moreover, following examination, the examiner determined that with respect to forward or lateral bending, uninterrupted sitting, prolonged or extensive standing, walking, stairclimbing, or lifting and/or carrying heavy loads, given appropriate accommodations, the Veteran might reasonably be expected to function in a sedentary capacity. It was added that with such adaptations, the appellant's low back condition did not diminish either his occupational functional capacity or potential for gainful employment. There is no indication in that record that the noncompensable service-connected Tarlov cyst of the tailbone results in any impairment. 

In view of the above, the Board finds that while the appellant may not be able to engage in heavy manual labor, it has been determined that service-connected disabilities alone do not result in such functional impairment to prevent sedentary employment. There is no evidence that the service-connected lumbar spine, bilateral lumbar radiculopathy, seborrheic dermatitis or tailbone cyst, either singly or in the aggregate preclude the Veteran from obtaining and maintaining at least some form of sedentary employment. It appears that he is enrolled in school and is functioning adequately as a student to prepare for appropriate employment opportunities conducive to his limitations. The fact that he is currently unemployed does not equate to unemployability for VA compensation purposes. See Van Hoose v. Brown, 4 Vet.App. 361, 363 (1993). The preponderance of the evidence is against finding that the Veteran is in fact precluded from gainful employment consistent with his educational background and physical limitations due to symptoms associated with his multiple service-connected disorders. Hence, unemployability due to service-connected disability is not demonstrated. 

The evidence is not in relative equipoise and the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet.App. 49 (1990). The preponderance of the evidence is against the claim.

Conclusion

In reaching this determination, the Board has considered the potential application of the provisions of 38 C.F.R. § 3.321(b)(1) governing those exceptional cases where a schedular evaluation is found to be inadequate. See Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). However, in the case at hand, the Rating Schedule adequately contemplates the nature and extent of the service-connected disorders at issue. Accordingly, referral for consideration of an extraschedular evaluation is not warranted. 

Under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in the case at hand, after applying the benefit of the doubt doctrine under Mittleider v. West, 11 Vet.App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.


ORDER

Entitlement to an evaluation of 10 percent for degenerative disc/joint disease of the lumbar spine since June 2, 2007 is denied. 

Entitlement to an evaluation of 40 percent for lumbar degenerative disc disease since October 28, 2010 is denied.

Entitlement to an evaluation of 10 percent for seborrheic dermatitis with rosacea is denied. 

Entitlement to a total disability rating based on unemployability due to service-connected disability is denied.



______________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs